Russell W. Faegenburg
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:  908.654.5000
Fax:  908.654.7866                        **Document Filed Electronically**
*Attorneys for Defendant A&B Ingredients, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LABORATORIES MIRET, S.A. and VEDEQSA, INC., | : Civil Action No. 08-4476 |
| Plaintiffs, | : District Judge P. Kevin Castel |
| v. | : |
| A&B INGREDIENTS, INC.<br>24 Spielman Road<br>Fairfield, New Jersey 07004, | : JURY DEMAND |
| Defendant. | : |
| | x |
| A&B INGREDIENTS, INC., | : |
| Counterclaimant, | : |
| v. | : |
| LABORATORIES MIRET, S.A,<br>VENTA DE ESPECIALIDADES QUIMICAS,<br>S.A., VEDEQSA, INC. and PURAC AMERICA,<br>INC., | : |
| Counterclaim-Defendants. | : |
| | x |

## A&B'S ANSWER AND COUNTERCLAIMS
## AND DEMAND FOR TRIAL BY JURY

Defendant A&B Ingredients, Inc. ("A&B") hereby answers and counterclaims in response to the complaint of plaintiffs Laboratories Miret, S.A. ("Lamirsa") and Vedeqsa, Inc. ("Vedeqsa U.S.") (collectively "plaintiffs"), as follows:

891094_1.DOC

## THE PARTIES

1.      A&B is without knowledge sufficient to admit or deny the allegations of paragraph 1 of plaintiffs' complaint, and therefore denies those allegations.

2.      A&B is without knowledge sufficient to admit or deny the allegations of paragraph 2 of plaintiffs' complaint, and therefore denies those allegations.

3.      A&B admits the allegations contained in paragraph 3 of plaintiffs' complaint.

## JURISDICTION AND VENUE

4.      To the extent paragraph 4 of plaintiffs' complaint requires a response, A&B admits that plaintiffs purport to assert a claim for patent infringement under the Patent Laws of the United States, and claims for unfair competition and trade secret misappropriation under state law. A&B otherwise denies the allegations contained in paragraph 4 of plaintiffs' complaint.

5.      Paragraph 5 of plaintiffs' complaint sets forth a legal conclusion as to which no response is required.

## FACTUAL BACKGROUND

6.      A&B admits that Lamirsa holds itself out as a developer of chemical products. A&B is without knowledge sufficient to admit or deny the remaining allegations of paragraph 6 of plaintiffs' complaint, and therefore denies those allegations.

7.      A&B admits that antimicrobial products or agents are used as preservatives to reduce the possibility of food-borne illnesses by controlling the risk of microbial contamination in food, which food products may include one or more of the products listed.  A&B otherwise denies the allegations contained in paragraph 7 of plaintiffs' complaint.

8.      A&B admits that Lauric Arginate is a cationic surfactant that has significant antimicrobial properties in certain applications.  A&B is without knowledge sufficient to admit

2

or deny the remaining allegations of paragraph 8 of plaintiffs' complaint, and therefore denies those allegations.

9.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 9 of plaintiffs' complaint, and therefore denies those allegations.

10.    A&B admits that FDA did not object to the information submitted by Venta de Especialidades Quimicas, S.A. ("Vedeqsa S.A.") that purports to demonstrate that LAE is Generally Recognized As Safe ("GRAS") for certain uses as a food preservative. A&B is without knowledge sufficient to admit or deny the remaining allegations of paragraph 10 of plaintiffs' complaint, and therefore denies those allegations.

11.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 11 of plaintiffs' complaint, and therefore denies those allegations.

12.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 12 of plaintiffs' complaint, and therefore denies those allegations.

13.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 13 of plaintiffs' complaint, and therefore denies those allegations.

14.    A&B admits that it manufactures CytoGuard, which includes LAE. A&B denies that it manufactures LAE. A&B otherwise denies the allegations of paragraph 14 of plaintiffs' complaint.

15.    A&B denies the allegations contained in paragraph 15 of plaintiffs' complaint.

16.    A&B denies the allegations contained in paragraph 16 of plaintiffs' complaint.

17.    A&B admits the allegations contained in paragraph 17 of plaintiffs' complaint.

18.    A&B denies that A&B approached Lamirsa regarding LAE-based food preservatives in 2004. Lamirsa, through Vedeqsa S.A., approached A&B in April 2004, seeking

3

a partner to develop sales of LAE-based food preservatives in the United States. A&B admits that Vedeqsa S.A. and A&B executed a letter of intent in May 2004 and that the letter includes a section entitled "Confidentiality." A&B otherwise denies the allegations of paragraph 18 of plaintiffs' complaint.

19.    A&B denies the allegations of paragraph 19 of plaintiffs' complaint.

20.    A&B denies the allegations of paragraph 20 of plaintiffs' complaint.

21.    A&B admits that Vedeqsa S.A. and A&B engaged in negotiations, as well as collaboration, at various points from 2004 to 2006 with respect to the marketing of an LAE product in the United States. A&B otherwise denies the allegations of paragraph 21 of plaintiffs' complaint.

22.    A&B admits that from 2004 to 2006, Vedeqsa S.A. and A&B collaborated with respect to the marketing of an LAE product in the United States. A&B otherwise denies the allegations of paragraph 22 of plaintiffs' complaint.

23.    A&B admits that from 2004 to 2006, Vedeqsa S.A. provided Mirenat-N® to A&B for testing and evaluation by potential customers and to allow A&B to effectively market the product to the trade. A&B otherwise denies the allegations of paragraph 23 of plaintiffs' complaint.

24.    A&B denies the allegations of paragraph 24 of plaintiffs' complaint.

25.    A&B denies the allegations of paragraph 25 of plaintiffs' complaint.

26.    A&B admits that in November 2005, Vedeqsa S.A. unilaterally announced that it was "extinguishing" its obligations under the letter of intent it signed with A&B in May 2004. A&B further notes that Vedeqsa S.A. and A&B subsequently executed a supply agreement in February 2006. A&B otherwise denies the allegations of paragraph 26 of plaintiffs' complaint.

4

27.    A&B denies the allegations of paragraph 27 of plaintiffs' complaint.

28.    A&B denies the allegations of paragraph 28 of plaintiffs' complaint.

29.    A&B denies the allegations of paragraph 29 of plaintiffs' complaint.

30.    A&B denies the allegations of paragraph 30 of plaintiffs' complaint.

### Count I:  INFRINGEMENT OF THE '769 PATENT

31.    A&B repeats and realleges paragraphs 1-30 above, as if fully set forth herein.

32.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 32 of plaintiffs' complaint, and therefore denies those allegations.

33.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 33 of plaintiffs' complaint, and therefore denies those allegations.

34.    A&B denies the allegations of paragraph 34 of plaintiffs' complaint.

35.    A&B denies the allegations of paragraph 35 of plaintiffs' complaint.

36.    A&B denies the allegations of paragraph 36 of plaintiffs' complaint.

### Count II:  UNFAIR COMPETITION — NEW YORK COMMON LAW

37.    A&B repeats and realleges paragraphs 1-36 above, as if fully set forth herein.

38.    A&B denies the allegations of paragraph 38 of plaintiffs' complaint.

39.    A&B denies the allegations of paragraph 39 of plaintiffs' complaint.

### Count III:  THEFT OF TRADE SECRETS

40.    A&B repeats and realleges paragraphs 1-39 above, as if fully set forth herein.

41.    A&B is without knowledge sufficient to admit or deny the allegations of paragraph 41 of plaintiffs' complaint, and therefore denies those allegations.

42.    A&B denies the allegations of paragraph 42 of plaintiffs' complaint.

43.    A&B denies the allegations of paragraph 43 of plaintiffs' complaint.

44.    A&B denies the allegations of paragraph 44 of plaintiffs' complaint.

891094_1.DOC

45.    A&B denies the allegations of paragraph 45 of plaintiffs' complaint.

## PRAYER FOR RELIEF

46.    A&B denies that plaintiffs are entitled to any of the relief requested in plaintiffs' Prayer for Relief.

## DEFENSES

47.    A&B does not infringe U.S. Patent No. 7,087,769 ("the '769 Patent") because it does not practice any method claimed in the '769 Patent and does not make, use, sell, offer to sell or import an LAE product made abroad using any method claimed in the '769 Patent.

48.    The claims of the '769 Patent are invalid for failure to comply with one or more provisions of the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including without limitation 35 U.S.C. §§ 102, 103, 112, 116 and/or 256.

49.    Plaintiffs' claim for alleged infringement of the '769 Patent is barred by the doctrines of equitable estoppel and/or laches.

50.    Plaintiffs' count for unfair competition fails to meet minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure in that it fails to identify which facts allegedly support the cause of action and why those facts constitute alleged unfair competition under New York law.

51.    Plaintiffs' counts for unfair competition and trade secret misappropriation fail to state claims upon which relief can be granted.

52.    Plaintiffs are barred from bringing their counts for unfair competition and trade secret misappropriation because of plaintiffs' unclean hands.

53.    A&B did not misappropriate any alleged trade secret of plaintiffs because, among other things, A&B had no contractual duty of confidentiality to Lamirsa, Vedeqsa S.A. or Vedeqsa U.S. and did not breach any such obligation.

6

891094_1.DOC

54.    Plaintiffs' state law claims are time barred.

## COUNTERCLAIMS

In accordance with Rule 13 of the Federal Rules of Civil Procedure, A&B asserts the following counterclaims against Lamirsa, Vedeqsa U.S., Vedeqsa S.A. and Purac America Inc.

### Parties

55.    Counterclaim-plaintiff A&B Ingredients, Inc. ("A&B") is a New Jersey corporation, having a place of business at 24 Spielman Road, Fairfield, New Jersey 07004.

56.    According to plaintiffs' complaint, counterclaim-defendant Laboratories Miret, S.A. ("Lamirsa") is a corporation organized and existing under the laws of Barcelona, Spain. Lamirsa has a place of business at Geminis, 4, Polig. Ind. Can Parellada, 08228 Terrasa, Spain.

57.    According to plaintiffs' complaint, counterclaim-defendant Vedeqsa, Inc. ("Vedeqsa U.S.") is a corporation organized and existing under the laws of the State of Delaware. Vedeqsa U.S. has a place of business at 11 Penn Plaza, 5th Floor, New York, New York 10001.

58.    Counterclaim-defendant Venta de Especialidades Quimicas, S.A. ("Vedeqsa S.A.") is a Spanish company with a place of business at Geminis, 4, Polig. Ind. Can Parellada, 08228 Terrasa, Spain. Upon information and belief, Vadeqsa S.A. regularly does business in this judicial district including through its acts of selling and offering products for sale in this district, opening an office in this district and selling Mirenat-N® in the United States through its wholly owned subsidiary Vedeqsa U.S.

59.    Counterclaim-defendant Purac America Inc. ("Purac") is a Delaware corporation with a principal place of business at 111 Barclay Boulevard, Lincolnshire, Illinois 60069. Upon information and belief, Purac regularly does business in this judicial district including through its acts of selling and offering products for sale in this district.

7

## Jurisdiction And Venue

60.    A&B asserts counterclaims for declaratory judgment of patent noninfringement and invalidity with respect to U.S. Patent No. 7,087,769 ("the '769 Patent") (against Lamirsa and Vedeqsa U.S.), for unfair competition (against Lamirsa, Vedeqsa S.A. and Vedeqsa U.S.), for breach of contract (against Lamirsa and Vedeqsa S.A.), for unjust enrichment (against Lamirsa, Vedeqsa S.A. and Vedeqsa U.S.) for false representation and false advertising (against Lamirsa, Vedeqsa S.A. and Vedeqsa U.S.), for tortious interference (against Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac), for registered trademark infringement under the Lanham Act (against Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac) and for common law trademark infringement (against Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac).

61.    A&B's counterclaims arise under the patent laws of the United States, Title 35, United States Code; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; the Lanham Act, Title 15, United States Code; and state laws regarding unfair competition, breach of contract, unjust enrichment, tortious interference and trademark infringement.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367 and 2201-02, as Count One (declaration of patent noninfringement and invalidity) arises under the Patent Laws of the United States and the Declaratory Judgment Act; Counts Six and Eight (violation of Section 43(a) and registered trademark infringement under the Lanham Act) arise under the Lanham Act; and the claims in Counts Two through Seven and Nine (unfair competition, breach of contract, unjust enrichment, false representation and false advertising, tortious interference and common law trademark infringement) form part of the same case or controversy as the claims in Counts One, Six and Eight.

62.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

891094_1.DOC

and the action is between citizens of different states and includes citizens of foreign states as additional parties.

63.    Venue is proper pursuant to 28 U.S.C. § 1391.

### Factual Background

64.    In April 2004, Vedeqsa S.A. approached A&B, seeking a partner to develop sales of an LAE-based food preservative, called Mirenat-N®, in the United States. Vedeqsa S.A. represented itself to be a member of Lamirsa Group.

65.    After initial discussions, in May 2004, A&B submitted to Vedeqsa S.A. a written business plan for the introduction of LAE into North America.

66.    On or around May 19, 2004, A&B and Vedeqsa S.A. executed a letter of intent ("Letter of Intent") in which A&B and Vedeqsa S.A. stated their intention to establish a commercial relationship by which A&B would commercialize Vedeqsa S.A.'s products.

67.    In the Letter of Intent, A&B and Vedeqsa S.A. agreed that as promptly as possible after execution of the letter, A&B and Vedeqsa S.A. would negotiate in good faith toward the preparation and execution of a definitive and formal distribution or agency agreement.

68.    Following execution of the Letter of Intent, in 2004 and 2005, A&B and Vedeqsa collaborated in promoting Mirenat-N® to the U.S. market.

69.    From 2004 to 2005, A&B introduced Vedeqsa S.A. to customers and potential customers in the United States.

70.    From 2004 to 2005, A&B worked with customers and potential customers in the United States to promote Mirenat-N® and develop new applications for it.

71.    From 2004 to 2005, A&B visited customers with Vedeqsa S.A. to promote Mirenat-N® and assisted Vedeqsa S.A. with promotion of Mirenat-N® at trade shows.

72.    Upon information and belief, neither Vedeqsa, Vedeqsa S.A. nor Lamirsa had developed any of the aforementioned U.S. contacts prior to A&B's involvement with Mirenat-N®.

73.    Also beginning in 2004, A&B proposed new application areas for Mirenat-N®, including the use of Mirenat-N® on additional food products, and worked with customers and potential customers on issues relating to specific applications for Mirenat-N®.

74.    Beginning in 2004, Vedeqsa S.A. represented to A&B, and to customers and potential customers, that the Lamirsa Group had developed and patented the Lauric Arginate molecule.

75.    On information and belief, neither Lamirsa nor Vedeqsa S.A. held any patent covering the Lauric Arginate molecule itself at the time of these representations.

76.    Lamirsa, Vadeqsa S.A. and Vadeqsa U.S. continue to make these representations, including at a 2008 trade show in New Orleans.

77.    Lamirsa's '769 Patent is directed to a particular method of manufacturing a cationic surfactant; the patent does not claim the Lauric Arginate molecule itself.

78.    From 2004 to 2005, Vedeqsa S.A. held A&B out as its partner in marketing Mirenat-N® in the United States.

79.    For example, in August 2004, A&B added Mirenat-N® to its Web site. Vedeqsa S.A. did not object. Rather, Vedeqsa S.A. sent A&B an e-mail expressing appreciation.

80.    Vedeqsa referred to A&B as Vedeqsa S.A.'s U.S. "distributor" for Mirenat-N® and as its "agent" in communications to customers or potential customers in 2004 and 2005.

891094_1.DOC

81.    Vedeqsa S.A. also referred customer inquiries regarding Mirenat-N® during this time to A&B, including requests from potential customers for product samples and technical support.

82.    Vedeqsa, Vedeqsa S.A. and Lamirsa led A&B to believe that A&B would be the distributor for Mirenat-N® in the United States.  A&B expended considerable time and resources developing potential customers and developing the market.  A&B understood and expected that it was and would be a partner with Vedeqsa S.A. in promoting Mirenat-N® in the United States and that a formal distributorship agreement would be executed in due course, as contemplated by the parties' Letter of Intent.  In reliance on this understanding, and Vedeqsa S.A.'s actions and representations, A&B expended substantial resources in preparing Mirenat-N® for introduction to the United States market.

83.    As a result of A&B's efforts, Vedeqsa S.A., Vedeqsa U.S. and Lamirsa acquired customers, gained access to U.S. markets and received substantial promotion for Mirenat-N® through trade shows and direct customer contacts.  Vedeqsa S.A., Vedeqsa U.S. and Lamirsa also obtained information and business opportunities for additional applications of Mirenat-N®. Vedeqsa S.A., Vedeqsa U.S. and Lamirsa would not have received these contacts, access, promotion and information without A&B's efforts.

84.    In October 2005, representatives of A&B and Vedeqsa S.A. met in Chicago and reached agreement concerning the terms of A&B's exclusive distributorship for Mirenat-N®. The parties memorialized these terms in a memorandum in or around November 2005.

85.    On November 25, 2005, however, Vedeqsa S.A. unilaterally terminated negotiations with A&B for a formal distributorship contract.

11

86.    Vedeqsa S.A. did not negotiate in good faith to prepare and execute a formal distributorship agreement, as required by the Letter of Intent, and in contravention of the parties' agreement reached in October 2005 in Chicago, which was memorialized in November 2005. Upon information and belief, once Vedeqsa S.A. received the benefits of its collaboration with A&B, including access to U.S. markets, Vedeqsa S.A. and Lamirsa decided to sell Mirenat-N® themselves. Vedeqsa S.A. formed Vedeqsa U.S. as a United States subsidiary, which became a distributor of Mirenat-N® in the United States for Vedeqsa S.A. and Lamirsa.

87.    A&B attempted to salvage the business relationship with Vedeqsa S.A. in late 2005.

88.    Vedeqsa S.A., however, refused to permit A&B to be an exclusive U.S. distributor of Mirenat-N®. Vedeqsa S.A. told A&B that A&B would only be permitted to purchase product from Vedeqsa for resale in the United States.

89.    According to Vedeqsa S.A., if A&B did not accept this arrangement, the commercial relationship between the parties would be "dead."

90.    On or around February 3, 2006, Vedeqsa S.A. and A&B executed a letter by which Vedeqsa S.A. and A&B agreed to a customer/supplier relationship.

91.    In the February 3, 2006 letter, Vedeqsa S.A. agreed to offer Mirenat-N® to A&B at a favorable market price for at least three years.

92.    A&B ordered product from Vedeqsa S.A., as permitted by the February 3, 2006 letter, but Vedeqsa S.A. refused to ship product to A&B.

93.    Following the conclusion of the business relationship between A&B and Vedeqsa S.A. and Lamirsa, A&B secured alternate supply arrangements for a Lauric Arginate

12

preservative product. A&B now sells its own Lauric Arginate antimicrobial product under the name CytoGuard.

94.    Upon information and belief, Vedeqsa U.S. (by itself or on behalf of Lamirsa and/or Vedeqsa S.A.) and Purac have told customers and potential customers that A&B's CytoGuard product infringes patents held by Lamirsa and/or Vedeqsa.

95.    The process used to make the Lauric Arginate in A&B's product does not practice any claim of Lamirsa's '769 Patent. Upon information and belief, neither Lamirsa, Vedeqsa S.A., Vedeqsa U.S. nor Purac has had a basis for asserting that A&B's CytoGuard product infringes the '769 Patent.

96.    Upon information and belief, Vedeqsa U.S. (by itself or on behalf of Lamirsa and/or Vedeqsa S.A.) and Purac have also used A&B's federally registered trademark, "SLIC" in communications with customers and potential customers.    A&B holds U.S. Trademark Registration No. 3,266,167 for the trademark SLIC for antimicrobial treatments and machines for applying antimicrobial agents. Upon information and belief, Vedeqsa U.S. and Purac have used SLIC in connection with identical or similar good and services, which is likely to cause confusion, or to cause mistake, or to deceive.

### Count One: Declaratory Judgment

97.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

98.    Counterclaim-plaintiff A&B asserts this counterclaim for declaratory judgment against counterclaim-defendants Lamirsa and Vedeqsa U.S.

99.    A real and justiciable controversy exists among the parties as to A&B's marketing and sale of its antimicrobial CytoGuard, and the legality of such activities under the Patent Laws,

13

35 U.S.C. §§ 1 *et seq.* A&B seeks a declaration pursuant to 28 USC §§ 1331, 1338, 2201, and 2202 as to its rights and legal relations under the Patent Laws, 35 U.S.C. §§ 1 *et seq.*

100.    Lamirsa claims to own U.S. Patent No. 7,087,769 ("the '769 Patent"), and has asserted a claim for infringement of that patent against A&B and its CytoGuard antimicrobial. Vedeqsa U.S. claims to be the exclusive licensee in the U.S. of the '769 Patent.

101.    A&B does not infringe the '769 Patent because it does not practice any method claimed in the '769 Patent and does not make, use, sell, offer to sell or import a product made using any method claimed in the '769 Patent.

102.    The claims of the '769 Patent are invalid for failure to comply with one or more provisions of the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including without limitation 35 U.S.C. §§ 102, 103, 112, 116 and/or 256.

103.    There is an actual and justiciable controversy between counterclaim-plaintiff A&B and counterclaim-defendants Lamirsa and Vedeqsa U.S. over alleged infringement and validity of the '769 Patent.

### Count Two:  Unfair Competition

104.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

105.    Counterclaim-plaintiff A&B asserts this counterclaim for unfair competition against counterclaim-defendants Lamirsa, Vedeqsa S.A. and Vedeqsa U.S.

106.    As explained above, Vedeqsa S.A. and Lamirsa sought out A&B as a partner to market Mirenat-N® in the United States, obtained A&B's substantial assistance in gaining a foothold in the United States market and led A&B to believe that A&B would be a partner with Vedeqsa S.A. in promoting Mirenat-N® in the United States.  In reliance on this understanding,

14

and Vedeqsa S.A.'s and Lamirsa's actions and representations, A&B expended substantial resources in preparing Mirenat-N® for introduction to the United States market.

107.    As a result of A&B's efforts, Vedeqsa S.A., Vedeqsa U.S. and Lamirsa acquired customers, gained access to U.S. markets and received substantial promotion for Mirenat-N® through trade shows and direct customer contacts.  Vedeqsa S.A., Vedeqsa U.S. and Lamirsa also obtained information and business opportunities for additional applications of Mirenat-N®. Vedeqsa S.A., Vedeqsa U.S. and Lamirsa would not have received these contacts, access, promotion and information without A&B's efforts.

108.    Vedeqsa S.A. did not negotiate in good faith to prepare and execute a formal distributorship agreement, as required by the Letter of Intent.  Vedeqsa S.A. also contravened the parties' agreement reached in October 2005 in Chicago, which was memorialized in November 2005, by unilaterally terminating negotiations with A&B for a formal distributorship contract.  Vedeqsa subsequently refused to honor the terms of its February 3, 2006 letter regarding a supply arrangement for Lauric Arginate products.  Vedeqsa S.A. has not otherwise compensated A&B for its work or for the benefits A&B conferred on Vedeqsa S.A.

109.    Upon information and belief, once Vedeqsa S.A. received the benefits of its collaboration with A&B, including access to U.S. markets, Vedeqsa S.A. and Lamirsa decided the sell Mirenat-N® themselves.  Vedeqsa S.A. formed Vedeqsa as a United States subsidiary, which became a distributor of Mirenat-N® in the United States for Vedeqsa S.A. and Lamirsa.

110.    The aforementioned acts of counterclaim-defendants constitute unfair competition and unfair business practices under applicable law.

111.    The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

15

112.    The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

113.    A&B has no adequate remedy at law.

### Count Three:  Breach Of Contact, Implied Contract And Quantum Meruit

114.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

115.    Counterclaim-plaintiff A&B asserts this counterclaim for breach of contract against counterclaim-defendants Lamirsa and Vedeqsa S.A.

116.    As explained above, on or around May 19, 2004, A&B and Vedeqsa S.A. executed a Letter of Intent in which A&B and Vedeqsa S.A. stated their intention to establish a commercial relationship by which A&B would commercialize Vedeqsa S.A.'s products.  In the Letter of Intent, A&B and Vedeqsa S.A. contemplated that A&B would be a distributor or agent for Mirenat-N® in the United States, and the parties agreed that as promptly as possible after execution of the letter, they would negotiate in good faith toward the preparation and execution of a definitive and formal distribution or agency agreement.

117.    Vedeqsa S.A. and Lamirsa led A&B to believe that A&B would be the exclusive distributor for Mirenat-N® in the United States and A&B expended considerable time and resources developing potential customers and developing the market.  A&B understood and reasonably expected that it was and would be a partner with Vedeqsa S.A. in promoting Mirenat-N® in the United States and that a formal distributorship agreement would be executed in due course, as required by the parties' Letter of Intent.  In reliance on this understanding, and Vedeqsa S.A.'s actions and representations, A&B expended substantial resources in preparing Mirenat-N® for introduction to the United States market.

118.    Implied in the relationship and course of dealing and conduct between A&B and counterclaim-defendants was the promise that A&B would be compensated for the value, services and ideas provided to counterclaim-defendants.

119.    Vedeqsa S.A. did not negotiate in good faith to prepare and execute a formal distributorship agreement, as required by the Letter of Intent. Vedeqsa S.A. also contravened the parties' agreement reached in October 2005 in Chicago, which was memorialized in November 2005, by unilaterally terminating negotiations with A&B for a formal distributorship contract.

120.    Counterclaim-defendants' acts, as explained above, constitute a breach of contract, breach of implied contract or quasi-contract, breach of the implied covenant of good faith and fair dealing, entitlement to recovery under quantum meruit and/or entitlement to recovery under detrimental reliance under applicable law.

121.    The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

122.    The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

123.    A&B has no adequate remedy at law.

### Count Four:  Breach Of Contact, Implied Contract And Quantum Meruit

124.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

125.    Counterclaim-plaintiff A&B asserts this counterclaim for breach of contract against counterclaim-defendants Lamirsa and Vedeqsa S.A.

126.    As explained above, on or around February 3, 2006, Vedeqsa S.A. and A&B executed a letter by which Vedeqsa S.A. and A&B agreed to a customer/supplier relationship.

17

Vedeqsa S.A. agreed to offer Mirenat-N® to A&B at a favorable market price for at least three years.

127.    A&B ordered product from Vedeqsa S.A. in accordance with the February 3, 2006 letter, but Vedeqsa S.A. refused to ship product to A&B.

128.    Counterclaim-defendants' acts, as explained above, constitute a breach of contract, breach of implied contract or quasi-contract, breach of the implied covenant of good faith and fair dealing, entitlement to recovery under quantum meruit and/or entitlement to recovery under detrimental reliance under applicable law.

129.    The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

130.    The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

131.    A&B has no adequate remedy at law.

### Count Five:  Unjust Enrichment

132.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

133.    Counterclaim-plaintiff A&B asserts this counterclaim for unjust enrichment against counterclaim-defendants Lamirsa, Vedeqsa S.A. and Vedeqsa U.S.

134.    As explained above, Vedeqsa S.A. and Lamirsa sought out A&B as a partner to market Mirenat-N® in the United States, obtained A&B's substantial assistance in gaining a foothold in the United States market and led A&B to believe that A&B would be a partner with Vedeqsa S.A. in promoting Mirenat-N® in the United States.  Vedeqsa S.A. and Lamirsa also led A&B to believe that a formal distributorship agreement would be executed in due course, as contemplated by the parties' Letter of Intent.  In reliance on this understanding, and Vedeqsa

18

S.A.'s actions and representations, A&B expended substantial resources in preparing Mirenat-N® for introduction to the United States market.

135.    As a result of A&B's efforts, Vedeqsa S.A., Vedeqsa U.S. and Lamirsa acquired customers, gained access to U.S. markets and received substantial promotion for Mirenat-N® through trade shows and direct customer contacts for marketing Mirenat-N®. Vedeqsa S.A., Vedeqsa U.S. and Lamirsa also obtained information and business opportunities for additional applications of Mirenat-N®. Vedeqsa S.A., Vedeqsa U.S. and Lamirsa would not have received these contacts, access, promotion and information without A&B's efforts.

136.    After Vedeqsa S.A., Vedeqsa U.S. and Lamirsa received the aforementioned benefits of the collaboration with A&B, and notwithstanding the parties' agreement reached in October 2005 in Chicago, which was memorialized in November 2005, Vedeqsa S.A. and Lamirsa terminated their business relationship with A&B without granting A&B a distributorship, a source of supply or any other compensation.

137.    Counterclaim-defendants' retention of the benefits provided by A&B, without compensation to A&B, would be unjust.

138.    As a result of the aforementioned acts, counterclaim-defendants have been unjustly enriched and are liable to A&B for the value of the benefits conferred by A&B under applicable law.

139.    The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

140.    The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

141.    A&B has no adequate remedy at law.

19

## Count Six:  False Representation and False Advertising

142.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

143.    Counterclaim-plaintiff A&B asserts this counterclaim for violation of Section 43(a) of the Lanham Act against counterclaim-defendants Lamirsa, Vedeqsa S.A and Vedeqsa U.S.

144.    As explained above, Vedeqsa S.A. represented to A&B, and to customers and potential customers, that the Lamirsa Group had developed and patented the Lauric Arginate molecule.  Vedeqsa U.S. has also made this representation.  In fact, Lamirsa's '769 Patent is directed only to a particular method of a cationic surfactant, not to the Lauric Arginate molecule itself.  On information and belief, neither Lamirsa, Vedeqsa S.A. nor Vedeqsa U.S. held any patent covering the Lauric Arginate molecule itself at the time of these representations.

145.    The aforementioned acts by counterclaim-defendants constitute false or misleading descriptions of fact, or false or misleading representations of fact, concerning Mirenat-N® under Section 43(a) of the Lanham Act and applicable state law.

146.    The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

147.    The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

148.    A&B has no adequate remedy at law.

## Count Seven:  Tortious Interference

149.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

20

150. Counterclaim-plaintiff A&B asserts this counterclaim for tortious interference against counterclaim-defendants Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac.

151. As explained above, upon information and belief, Vedeqsa U.S. (by itself or on behalf of Lamirsa and/or Vedeqsa S.A.) and Purac have told customers and potential customers that A&B's CytoGuard product infringes patents held by Lamirsa and/or Vedeqsa.

152. The process used to make the Lauric Arginate in A&B's product does not practice any claim of Lamirsa's '769 Patent. Upon information and belief, neither Lamirsa, Vedeqsa S.A., Vedeqsa U.S. nor Purac has had a basis for asserting that A&B's CytoGuard product infringes the '769 Patent.

153. Furthermore, Vedeqsa S.A. and Vedeqsa U.S. have represented to customers and potential customers that the Lamirsa group developed and patented the Lauric Arginate molecule. In fact, Lamirsa's '769 Patent is directed only to a particular method of manufacturing a cationic surfactant, not to the Lauric Arginate molecule itself. On information and belief, neither Lamirsa, Vedeqsa S.A. nor Vedeqsa U.S. held any patent covering the Lauric Arginate molecule itself at the time of these representations.

154. The aforementioned acts by counterclaim-defendants constitute tortious interference under applicable law.

155. The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

156. The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

157. A&B has no adequate remedy at law.

21

**Count Eight:  Trademark Infringement (Federal)**

158.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

159.    Counterclaim-plaintiff A&B asserts this counterclaim for trademark infringement against counterclaim-defendants Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac.

160.    A&B has used the trademark SLIC for antimicrobial treatments and machines for applying antimicrobial agents since at least as early as 2006.  A&B holds U.S. Trademark Registration No. 3,266,167 for the trademark SLIC for antimicrobial treatments and machines for applying antimicrobial agents.

161.    On information and belief, subsequent to A&B's adoption, use and registration of its SLIC mark, counterclaim-defendants Vedeqsa U.S. (by itself or on behalf of Lamirsa and/or Vedeqsa S.A.) and Purac have used A&B's federally-registered trademark, SLIC, for identical or similar good and services, which is likely to cause confusion, or to cause mistake, or to deceive.

162.    On information and belief, counterclaim-defendants knowingly and willfully used a confusingly similar mark to confuse consumers as to the origin, source, sponsorship or approval of their goods and services.

163.    Counterclaim-defendants' acts constitute trademark infringement in violation of Section 32(1) of the Federal Trademark Act (15 U.S.C. § 1114(1)).

164.    Counter-defendants' use of a mark that is confusingly similar to the A&B mark in connection with offering their goods and services constitutes a false designation of origin and false description or representation.

165.    Counter-defendants' false designation of origin and false misrepresentation constitute acts of trademark infringement in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

166.    Upon information and belief, the aforesaid acts of the counterclaim-defendants were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to A&B, thus rendering the present case "exceptional" as that term is employed in 15 U.S.C. § 1117.

167.    The aforesaid conduct of the counterclaim-defendants has caused, and unless restrained by this Court will continue to cause, immediate, great and irreparable injury to A&B's property and business.

168.    A&B has no adequate remedy at law.

### Count Nine:  Trademark Infringement (Common Law)

169.    A&B repeats and realleges all of the preceding paragraphs as if fully set forth herein.

170.    Counterclaim-plaintiff A&B asserts this counterclaim for common law trademark infringement against counterclaim-defendants Lamirsa, Vedeqsa S.A., Vedeqsa U.S. and Purac.

171.    A&B holds common law rights in the trademark SLIC for antimicrobial treatments and machines for applying antimicrobial agents, as a result of use of that mark in commerce at least as early as 2006.

172.    On information and belief, subsequent to A&B's adoption and use of the SLIC mark, counterclaim-defendants have used SLIC for identical or similar good and services, which is likely to cause confusion, or to cause mistake, or to deceive.

173.    On information and belief, counterclaim-defendants knowingly and willfully used a confusingly similar mars to confuse consumers as to the origin, source, sponsorship or approval of their goods and services.

174.    Counterclaim-defendants' acts constitute common law trademark infringement and unfair competition.

23

175.   The aforesaid conduct of counterclaim-defendants was committed willfully, knowingly, maliciously, and in conscious disregard of A&B's rights.

176.   The aforesaid acts by counterclaim-defendants have caused immediate and irreparable injury to A&B's property and business.

177.   A&B has no adequate remedy at law.

WHEREFORE, plaintiffs' complaint should be dismissed with prejudice, all relief requested by plaintiffs should be denied, and the Court should enter judgment in A&B's favor, including the following:

1.   That the plaintiffs' complaint is dismissed with prejudice;

2.   That the '769 Patent be declared invalid and not infringed by A&B;

3.   That A&B be declared not to have engaged in unfair competition;

4.   That A&B be declared not to have misappropriated any trade secret of plaintiffs;

5.   A monetary award to A&B in the amount of the actual damages sustained by it resulting from the unfair competition by counterclaim-defendants;

6.   A monetary award to A&B in the amount of the actual damages sustained by it resulting from the breach of contract by counterclaim-defendants;

7.   A monetary award of restitution to A&B in the amount that any and all of the counterclaim-defendants have been unjustly enriched by the counterclaim-defendants' actions;

8.   A monetary award to A&B in the amount of the actual damages sustained by it resulting from the false representations and false advertising by counterclaim-defendants, and a preliminary and permanent injunction precluding counterclaim defendants from stating that they hold patent rights to the Lauric Arginate molecule;

24

9.    A monetary award to A&B in the amount of the actual damages sustained by it resulting from the tortious interference by counterclaim-defendants and a preliminary and permanent injunction precluding counterclaim defendants from committing continuing acts of tortious inteference;

10.    A preliminary and permanent injunction precluding counterclaim-defendants from using the SLIC mark or any mark confusingly similar thereto in connection with the offer or sale of any goods, the rendering of any services, or any other commercial activities;

11.    An award of damages to A&B, pursuant to 15 U.S.C. § 1117(a), of up to three times the damages suffered by A&B, and three times the profits earned by the counterclaim-defendants;

12.    An award to A&B of compensatory, consequential, and/or incidental damages;

13.    An award to A&B of treble, exemplary, and/or punitive damages;

14.    An award to A&B of its reasonable attorney fees and the costs of this action, and an award to A&B of its attorney fees and costs available under 35 U.S.C. § 285;

15.    Prejudgment and post judgment interest on the above monetary awards; and

16.    Such other and further relief as this Court deems equitable and just.

891094_1.DOC

**Jury Demand**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, A&B demands a jury trial

on all issues of its counterclaims so triable.

Respectfully Submitted,

LERNER, DAVID, LITTENBERG,
    KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090
Tel:    908 654-5000
Fax:    908 654-7866
*Attorneys for Defendant A&B Ingredients,
Inc.*

Dated:  July 7, 2008                    By:   s/ Russell W. Faegenburg
                                              Russell W. Faegenburg
                                              E-mail:rfaegenburg@ldlkm.com
                                                     litigation@ldlkm.com

26

Russell W. Faegenburg (RF 3041)
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:    908.654.5000
Fax:    908.654.7866
*Attorneys for Defendant A&B Ingredients, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LABORATORIES MIRET, S.A. and VEDEQSA, INC., | : | Civil Action No. 08-4476 |
| | : | |
| Plaintiffs, | : | District Judge P. Kevin Castel |
| v. | : | |
| | : | |
| A&B INGREDIENTS, INC., | : | JURY DEMAND |
| | : | |
| Defendant. | : | |
| | x | |
| A&B INGREDIENTS, INC., | : | |
| | : | |
| Counterclaimant, | : | SUMMONS ON COUNTERCLAIMS |
| | : | |
| v. | : | |
| | : | |
| LABORATORIES MIRET, S.A, VENTA DE ESPECIALIDADES QUIMICAS, S.A., VEDEQSA, INC. and PURAC AMERICA, INC., | : | |
| | : | |
| Counterclaim-Defendants. | : | |
| | x | |

To Counterclaim-Defendant
Venta de Especialidades Quimicas, S.A.
Geminis, 4, Polig. Ind. Can Parellada
08228 Terrasa, Spain

You are hereby summoned and required to serve upon Counterclaimant's attorney,

Russell W. Faegenburg of Lerner, David, Littenberg, Krumholz & Mentlik, LLP, whose address

is 600 South Avenue West, Westfield, New Jersey 07090, an answer to the Answer and

Counterclaims which is herewith served upon you within twenty (20) days after the service of this summons upon you exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Counterclaims.

There is also served upon you herewith a copy of the Complaint of Plaintiff.

_____          _____
CLERK                                                      DATE

Russell W. Faegenburg (RF 3041)
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:    908.654.5000
Fax:    908.654.7866
*Attorneys for Defendant A&B Ingredients, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LABORATORIES MIRET, S.A. and VEDEQSA, INC., | : | Civil Action No. 08-4476 |
| | : | |
| Plaintiffs, | : | District Judge P. Kevin Castel |
| v. | : | |
| | : | |
| A&B INGREDIENTS, INC., | : | |
| | : | JURY DEMAND |
| Defendant. | : | |
| | x | |
| A&B INGREDIENTS, INC., | : | |
| | : | |
| Counterclaimant, | : | SUMMONS ON COUNTERCLAIMS |
| | : | |
| v. | : | |
| | : | |
| LABORATORIES MIRET, S.A, VENTA DE ESPECIALIDADES QUIMICAS, S.A., VEDEQSA, INC. and PURAC AMERICA, INC., | : | |
| | : | |
| Counterclaim-Defendants. | : | |
| | x | |

To Counterclaim-Defendant
Purac America Inc.
111 Barclay Boulevard
Lincolnshire, IL 60069

You are hereby summoned and required to serve upon Counterclaimant's attorney,

Russell W. Faegenburg of Lerner, David, Littenberg, Krumholz & Mentlik, LLP, whose address

is 600 South Avenue West, Westfield, New Jersey 07090, an answer to the Answer and

Counterclaims which is herewith served upon you within twenty (20) days after the service of this summons upon you exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Counterclaims.

There is also served upon you herewith a copy of the Complaint of Plaintiff.


_____          _____
CLERK                                      DATE